UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGAN XANDER NELSON,

    Plaintiff,

v.

    Case No. 1:23-cv-493

    Hon. Hala Y. Jarbou

L&S AFFILIATES, INC.,

    Defendant.
_____/

## **OPINION**

Plaintiff Rogan X. Nelson filed this lawsuit claiming Defendant L&S Affiliates, Inc. ("L&S") is liable for injuries he sustained while working for non-party S. Hayes, Inc. (Compl. 2, ECF No. 1-1, PageID.10.) His brother and colleague, Brock Nelson, was driving a truck, towing a gooseneck trailer on which Rogan was riding. Rogan fell off the trailer and claims L&S, the owner of the truck, is liable for his injuries under Michigan's owner liability statute.

Before the Court are two motions. L&S filed a motion for summary judgment requesting the Court dismiss Rogan's owner liability claim as a matter of law. (ECF No. 33.) Rogan filed a motion for partial summary judgment seeking to prevent L&S from asserting that subsequent medical treatment was a superseding cause of Rogan's injuries. (ECF No. 35.) For the reasons discussed herein, the Court will deny both motions.

### **I. BACKGROUND**

On or around June 10, 2020, Rogan was working as a laborer for S. Hayes, Inc. (Compl. 2.) Tasked with assisting in erosion services in Boyne City, his job involved moving bales of hay onto a gooseneck trailer, eventually loading the hay into a mulching machine. (G. Nelson Dep. 14-16, ECF No. 39-1.) Rogan rode, unrestrained, on the trailer with piles of hay around him. (T. Nelson

Dep. 45, ECF No. 39-5.)  His cousin, Gavyn Nelson, was by his side.  (G. Nelson Dep. 15, 18.) Rogan's brother, Brock, drove the truck that towed this trailer.  (*Id.* at 17.)  The truck, registered to L&S (Def.'s Mot., PageID.239), traveled at a slow pace, below ten miles per hour (B. Nelson Dep. 20, ECF No. 39-2).  The piles of hay on the trailer blocked Brock's view through his rear-view mirror as he drove.  (*Id.* at 21.)

While travelling down the road, hay on the trailer would come loose and hit Rogan and Gavyn. (G. Nelson Dep. 18.)  With the truck and trailer in motion, Rogan moved towards the front of the trailer to attempt to fix the hay and prevent it from blowing into their faces.  (*Id.*)  He stepped on a loose bale, tripped, and fell off the trailer.  (*Id.*)  Rogan fractured his skull and sustained other injuries.  (B. Nelson Dep. 47.)  An ambulance took him to Helen DeVos Hospital ("DeVos") in Grand Rapids.  (G. Nelson Dep. 19-20; T. Nelson Dep. 46.)

While in the hospital, due to brain swelling, Rogan entered an induced coma. (B. Nelson Dep. 47.)  During his treatment, he was overdosed on pentobarbital.  (R. Nelson Dep. 90, ECF 37-4.)  On two separate occasions, he went into cardiac arrest.  (T. Nelson Dep. 46.)  While Rogan was eventually discharged from the hospital, physical and mental injuries linger.  (*Id.* at 46-49.)  He filed this lawsuit against L&S claiming it is liable for his injuries under Michigan's automobile owner liability statute.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring

the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

### III. ANALYSIS

#### A. L&S's Motion for Summary Judgment

Under Michigan's owner liability statute, if the owner of a vehicle gives permission for someone else to drive it, then they are liable for damages resulting from its negligent operation. Mich. Comp. Laws § 257.401. Because L&S owns the truck and allowed Brock to drive it, L&S would be liable for any of Rogan's injuries attributable to Brock's negligent operation of the vehicle.

L&S contends that Rogan's claim fails as a matter of law because no reasonable jury could find that Brock was negligent in his operation of the truck. Further, L&S argues, even if Brock was negligent, comparative negligence and the assumption of risk doctrine would bar Rogan's claims. The Court disagrees for the reasons below.

First, L&S argues Brock's conduct cannot be negligent because Michigan law allows a driver to operate a vehicle with occupants sitting in an attached goose neck trailer. The Court disagrees. The relevant statute (according to L&S) states: "[e]xcept as provided in this section, an operator shall not permit a person less than 18 years of age to ride in the *open bed of a pickup truck* on a highway, road, or street in a city, village, or township at a speed greater than 15 miles per hour." Mich. Comp. Laws § 257.682b(1) (emphasis added). L&S claims that there is no difference between riding in the bed of a truck and riding on a trailer. But Michigan law treats these situations

3

differently. When a passenger rides in the bed of pickup truck, they are an occupant of the vehicle. *Rosner v. Mich. Mut. Ins. Co.*, 471 N.W.2d 923, 925 (Mich. Ct. App. 1991) ("The bed [of a truck] is analogous to the rear seat of a car."). "A pickup truck, including the bed, is one motor vehicle." *Id.* However, in contrast, a trailer is a "separate instrumentalit[y]" from the vehicle that tows it. *Id.* Someone sitting in a trailer is not a passenger or occupant of the vehicle that tows it. *Id.* The statute L&S references does not apply to this case.[1]

The question becomes whether Brock, as the driver of the truck, violated a common-law duty owed to Rogan, an occupant of the trailer. In Michigan, drivers have a general responsibility to operate a vehicle in a safe manner. *Rupert v. Daggett*, 695 F.3d 417, 424 (6th Cir. 2012). "Motorists driving on Michigan roadways owe a duty to all drivers, passengers, pedestrians, and property owners (i.e. the public generally) to operate their vehicles with due care." *Kincaid v. Croskey*, No. 310148, 2013 WL 6124289, at *10 n.5 (Mich. Ct. App. Nov. 21, 2013) (quoting *White v. Beasley*, 552 N.W.2d 1, 20 (Mich. 1996) (Levin, J., dissenting) (clarifying general duties unrelated to the holding)). "While a motorist is not required to guard against every conceivable result of his actions, he is required to exercise reasonable care in order to avoid the foreseeable consequences of his actions." *Rupert*, 695 F.3d at 424 (quoting *Sponkowski v. Ingham Cnty. Rd. Comm'n*, 393 N.W.2d 579, 581 (Mich. Ct. App. 1986)). If the way in which a driver operated a vehicle could foreseeably cause injury to the occupant of another vehicle, the driver would be liable for negligence. *See Sponkowski*, 695 F.3d at 580-81 (holding that a driver owed a duty of

---

[1] Even if riding in the bed of a truck and riding on a trailer were treated the same, conforming conduct to abide by a statute's requirements does not free the individual from a potential negligence claim. *See Loweke v. Ann Arbor Ceiling & Partition Co., LLC*, 809 N.W.2d 553, 560 (Mich. 2011) (recognizing that common-law duties exist separately from statutory duties). Any abrogative effect of this statute on the common law duty to keep passengers safe is limited to specific conduct described and would not free a driver from potential liability here. *See Dawe v. Dr. Reuven Bar-Levav & Assocs., P.C.*, 780 N.W.2d 272, 277-78 (Mich. 2010); Blashfield Auto. L. & Prac. § 152:16 (Thomas West 2024) ("The operator of a motor vehicle may have a duty to prevent the conduct of an occupant that endangers the safety of the occupant or other persons if that misconduct was foreseeable.").

4

reasonable care to the passenger of another vehicle because the injury was "within the foreseeable risk of harm created by defendants' alleged negligent conduct"). Rogan argues that Brock was negligent by operating the vehicle with an obstructed view and unrestrained passengers in the trailer. Brock knew Rogan was on the hay-covered trailer when he drove it; if Rogan's injury was a foreseeable consequence of the way he operated the vehicle, then Brock owed a duty to Rogan. "[T]he determination of whether a particular harm is foreseeable is an issue for the trier of fact in deciding if the [individual] has been negligent." *Id.* at 581. Thus, a jury should determine whether Rogan's injury was a foreseeable result of Brock's conduct.

Construing the facts in the light most favorable to the nonmoving party, a reasonable jury could conclude that Brock breached this potential duty by operating the vehicle in an inherently unsafe manner (with an obstructed view and unrestrained passengers on the trailer). A reasonable jury could also conclude that his conduct caused Rogan's injury. Therefore, summary judgment is inappropriate.

L&S extends its argument to comparative negligence and assumption of risk, claiming that Rogan is barred from relief because he knew riding on the trailer was dangerous and was more than 50% at fault. "The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant . . . ." *Rodriguez v. Solar of Mich., Inc.*, 478 N.W.2d 914, 918 (Mich. Ct. App. 1991) (citing *Lowe v. Est. Motors Ltd.*, 410 N.W.2d 706, 715-16 (Mich. 1987)). "[T]he question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration." *Id.* (citing *Lowe*, 410 N.W.2d at 715-16).

Not only do courts refrain from allocating fault or liability percentages, *Holton v. A+ Ins. Assoc., Inc.*, 661 N.W.2d, 248, 252 (Mich. Ct. App. 2003) ("[T]he trier of fact in a tort-based action must allocate liability among those at fault.") (emphasis omitted), here, when looking at the evidence presented in the light most favorable to the nonmoving party, a reasonable jury could conclude that Rogan was not negligent. No one advised Rogan that employees were prohibited from riding in the trailer. (G. Nelson Dep. 28.) Even if Rogan may have, upon first instinct, thought riding on the trailer was a bad idea, the people teaching him how to do this job all rode on the trailer; it was the norm for this type of job. (R. Nelson Dep. 141-42.) Rogan was one of many young employees who, after witnessing more-experienced workers routinely ride on the trailers, assumed this was safe and standard practice. (G. Nelson Dep. 32.) No one gave any instructions regarding safety measures or a protocol for riding on the trailers. (B. Nelson Dep. 45.) There were no safety restraints or harnesses on the trailer. (T. Nelson Dep. 45.) Despite an obstructed view, with hay blocking his rear-view mirror, Brock drove the truck that towed the trailer. (B. Nelson Dep. 23.) With these facts, a reasonable jury could determine that Rogan was not 50% at fault, operating within a dangerous situation that the driver created.

The assumption of risk defense also fails. In Michigan, the assumption of risk doctrine applies when "an employment relationship exists between the parties." *Felgner v. Anderson*, 133 N.W.2d 136, 153 (Mich. 1965). The assumption of risk doctrine limits the scope of an employer's liability to their employees, "and has no utility in barring recovery where defendant has been found to have negligently breached a duty owed to plaintiff." *Id.* Here, L&S did not employ Rogan or Brock. The parties are not in an employer-employee relationship, so assumption of risk does not apply.[2]

---

[2] Even if assumption of risk did apply, the doctrine includes those "dangers of injury obviously incident to the discharge of the servant's duty." *Felgner*, 133 N.W.2d at 147 n.1. As discussed, a reasonable juror could conclude

6

The extent to which Rogan is responsible for these injuries is best suited for a jury, and the assumption of risk doctrine does not apply given the parties' relationship. Therefore, summary judgment is not appropriate. L&S's motion for summary judgment will be denied.

**B. Rogan's Motion for Partial Summary Judgment**

Rogan filed a motion for partial summary judgment in an effort to prevent L&S from claiming the affirmative defense of an intervening or superseding cause. He argues that injuries from medical treatment constitute a typical risk, part of the natural chain of events stemming from negligence-induced harm.

"Michigan courts recognize that 'whether an intervening negligent act of a third person constitutes a superseding proximate cause is a question for a jury.'" *Jones v. Kent County*, No. 1:20-cv-36, 2020 WL 7327576, at *5 (W.D. Mich. Aug. 14, 2020) (quoting *Taylor v. Wyeth Lab'ys., Inc.*, 362 N.W.2d 293, 300 (Mich. Ct. App. 1984)). "An intervening cause is not an absolute bar to liability if it is foreseeable." *Richards v. Pierce*, 412 N.W.2d 725, 730 (Mich. Ct. App. 1987). In negligence cases, "[c]onsequences of a doctor's negligent acts in treating the plaintiff's original injury" are within the scope of liability if they are foreseeable risks. *Id.* Ultimately, "whether the doctor's intervening negligent act constitutes a superseding proximate cause is a question for the jury." *Id.*

Rogan even acknowledges that "[g]enerally, the question of whether an intervening act constituted a superseding act is a factual issue to be determined by the jury." (Pl.'s Mot. 6, ECF No. 35.) If the intervening act was foreseeable, it would not constitute an intervening act, and

---

that these risks were not obvious given the lack of instruction, lack of prohibition, and general workplace norms that enabled employees to routinely ride on trailers. Rogan learned that riding on the trailer was standard practice, there were no restraints on the trailer, and no one told him that his conduct would be unsafe. (G. Nelson Dep. 32; T. Nelson Dep. 45.)

7

foreseeability is a question for the jury when reasonable minds can disagree. *See, e.g.*, *Sponkowski*, 695 F.3d at 581.

Here, reasonable minds can disagree on foreseeability. Looking at the facts in the light most favorable to the nonmoving party, L&S proffers evidence that could lead a reasonable jury to conclude Rogan's overdose on pentobarbital was an unforeseen consequence. It presents Rogan's own notice of intent to file a malpractice action against his treating health care providers, which outlines providers' characterizations of Rogan's injuries—particularly his overdose on pentobarbital—as unforeseen and unexpected. (ECF No. 40-5.) Summary judgment is inappropriate where genuine issues of material fact remain, as is the case here. The Court will deny Rogan's motion for partial summary judgment.

## IV. CONCLUSION

Genuine issues of material fact remain with respect to Rogan's negligence claim against L&S. Whether Brock's operation of the vehicle—with an obstructed view and unrestrained passengers on the trailer—could foreseeably lead to Rogan's injuries is a question for the trier of fact. Similarly, a reasonable jury could conclude that Rogan's medical care at DeVos constitutes a superseding or intervening cause. Thus, the Court will deny both motions.

The Court will enter an order consistent with this Opinion.

Dated: October 23, 2024                     /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE

8